IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUANITA ARRINGTON, as Independent Administrator of the Estate of RONALD ARRINGTON, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 17-cv-5345 |
| v. | ) ) | Judge Thomas M. Durkin |
| CITY OF CHICAGO, an Illinois municipal corporation, et al, | ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

| | | |
|---|---|---|
| ISIAH STEVENSON, et al | ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-4839 |
| v. | ) ) | Judge Thomas M. Durkin |
| CITY OF CHICAGO, an Illinois municipal corporation, et al, | ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR JUDGEMENT AS A MATTER
OF LAW AS TO THE AFFIRMATIVE DEFENSE OF JOINT ENTERPRISE**

Plaintiffs, Isiah Stevenson, Michael Cokes, and Juanita Arrington, move this court, pursuant to Fed. R. Civ. Pro. 50(a)(1)-(2), to find that Defendants' assertion of Joint Enterprise, which lacks legal precedent and evidentiary support, must be dismissed as a matter of law. Plaintiffs state the following in support:

Defendants Dean Ewing, and the City of Chicago, have raised the affirmative defense of Joint Enterprise in this case. This affirmative defense must be stricken as the law does not support it – neither do the facts, even when seen in the light most favorable to Defendants. Rather than having pleaded a legitimate affirmative defense, Defendants aim to improperly put the Plaintiffs

on trial for conspiracy using highly prejudicial evidence that does not support the existence of a conspiracy and which, as a matter of law, could never support the purported affirmative defense of "Joint Enterprise." While "some courts refer to this topic under consideration [as] a 'joint enterprise', some as 'joint venture', and others as 'joint adventure', 'imputed negligence', 'business enterprise', [or] 'common business enterprise'" none of the case law supports Defendants' assertion of its application here. *Babington v. Bogdanovic*, 7 Ill. App. 3d 593 (Ill. App. Ct. 1972).

Defendants are entirely unable to satisfy the elements required by a Joint Enterprise affirmative defense. To attempt to avoid this reality Defendants have made furtive efforts that essentially amount to a "smoke screen." They have filed Motions *in Limine* seeking to bar Plaintiffs from contesting discovery violations, which Defendants seemingly anticipate committing at trial (see Defendant's MIL #5 which would create the conditions permitting a "trial by ambush"). They have refused to identify witnesses who will testify to key elements of their defense (*Dkt No. 354* at *14 ¶ 2 stating "*an eyewitness* will testify that the Pontiac stalked the Arby's worker, that Malone exited the Pontiac and attacked the victim, and the Pontiac then drove to pick up the waiting Malone" (even now, at the eleventh hour, *Defendants still refuse to provide this purported witnesses name*, and no such eyewitness has ever been identified previously – even by description)). They have sought to bar inclusion of the Police Reports generated during the course of the events, presumably to limit the jury's exposure to anticipated contradictions in the testimony presented by various witnesses. *Dkt. No.* 344 at *8 (Motion *in Limine* No. 17). They have even gone so far as to raise new affirmative defenses in their Response to Plaintiffs' Motions *In Limine* (*Dkt. No. 354* where Defendants claim for the first time that they have raised "contributory…willful and wanton"). The depth of the chasms in their purported affirmative

defense of "Joint Enterprise" is likely not lost on the Defendants. This is exemplified by their attempt to omit elements of any such defense from the jury instructions. Their attempt to omit the required elements shows how they intend to sneak the defense into the trial *sub silencio*, without satisfying their burden to prove any elements (as shown below, no such defense is available to Defendants and, therefore, no such elements could *ever* be proven – which is exactly the point.) (See *Dkt No.* 352 at *149 where Defendants seek to ask the jury whether Joint Enterprise exists without providing any elements).

Defendants seek to avoid presentation of any elements for the purported affirmative defense of "Joint Enterprise" because the version of it asserted by the Defendants simply does not exist. In short, Defendants are attempting to make a chimera from several different doctrines, with parts improperly ripped from criminal law's Accomplice Liability (or Accountability Liability in Illinois), corporate law's Joint Enterprise and international criminal law's Joint Criminal Enterprise. (See *The Prosecutor v. Milutinovic et al.,* Case No. IT-99-37-AR72, 21 May 2003). None of these doctrines are applicable in the captioned case. In its Memorandum Opinion and Order ("MOO") this Court was careful not to adopt Defendants' characterization of Joint Enterprise as Joint Criminal Enterprise. As Plaintiffs pointed out to the Court in briefing, there is no such claim or cause of action as Joint "Criminal" Enterprise under Illinois law. Rather, the claim or cause of action of Joint Enterprise must be borne out of a business relationship meeting the criteria required by Illinois common law. As the Court alluded to in its MOO, to prove a prima facie case of Joint Enterprise, the defendants *must* prove the elements detailed in the IPI Civil Jury Instructions, 72.04, to wit:

> A joint enterprise exists if these four elements are present:
> (1) An **agreement**, express or implied, between \_\_\_\_ and \_\_\_\_; and
> (2) A **common purpose** to be carried out by \_\_\_\_ and \_\_\_\_; and

> (3) A **common business interest in that purpose** between \_\_\_\_ and \_\_\_\_; and
> (4) An **understanding** between them that each had **a right to share in the control of the operation of the car**.

In other words the "indispensable elements" in Illinois are "an association of two or more persons to carry out a single enterprise with a legitimate purpose, a community of interest in such purpose, expectation of profits and the sharing thereof and the right of each person to direct and govern the conduct of each other person." *Pinkowski v. Coglay*, 347 F.2d 411, 413 (7th Cir. 1965).

The doctrine of Joint Enterprise in the State of Illinois is limited exclusively to business enterprises. See *Campanella v. Zajic*, 62 Ill. App. 3d 886 (Ill. App. Ct. 1978), *Summers v. Summers*, 40 Ill. 2d 338 (Ill. 1968). In *Campanella*, the court began its analysis on Joint Enterprise by noting "the general rule is that negligence of a driver of an automobile may not be imputed to his passenger. Recognized exceptions to the rule are seen where the relationship of *respondeat superior* between the driver and passenger is present or… [they] are engaged in a joint enterprise." Id. at 887. From here the court expressed that in order to establish the existence of a joint enterprise of a nature "which would cause negligence of the driver to be chargeable to his passenger… the evidence [must] show that the automobile…was being used as part of a common *business* enterprise and the occupants were mutually engaged in the trip as a part of such enterprise." Id. In defining a "business" enterprise, the *Campanella* court was persuaded by the holding asserted within *Fisher v. Johnson* 238 Ill. App. 25 (Ill. App. Ct. 1925), which outlined the requirement that a business enterprise could not be found when it involved "no common financial interest, no partnership, no relation of master and servant, or principal and agent, and no right of either to direct or control the other in the management of [their] car." *Campanella*, at 888. To provide further clarity as to what constituted a "business enterprise" the *Campanella* court cited *Clemens v.*

*O'Brien*, 85 N.J. Super. 404 (App. Div. 1964), expressing that such an enterprise is "by definition an association for commercial or profit-making purposes, not social purposes." *Campanella* at 888.

The Second Restatement of Torts § 491 (e) outlines the following in instances in which an automobile trip may be considered to have occurred as part of a Joint Enterprise:

> The question whether the plaintiff is engaged in a joint enterprise with a negligent third person is usually important when two or more persons are taking a ride or trip in an automobile or other vehicle and an accident happens through the negligence of both the defendant and the driver of the vehicle. When the plaintiff is a guest, as defined in § 490, Comment *a*, the effect of the driver's negligence upon the plaintiff's right to recover is determined by the rule stated in that Section. Therefore, if there is no prearrangement for a substantial sharing of the expenses of the trip, as to which see Comment *i*, the trip is not a joint enterprise merely because it is made at the request of the plaintiff, because he and his host have a common destination, because the destination or any change in it is to be determined by mutual agreement, because it is arranged that the guest is to drive alternatively with his host, or even because they are going to the common destination to accomplish a purpose in which they have a common but not a business interest. No one of these facts, nor indeed all of them together, is sufficient to justify a jury or other trier of fact in finding that the trip was a joint enterprise.

The doctrine of Joint Enterprise raised in this case must therefore be understood to require Defendants to prove the existence of a business enterprise. It is not sufficient to claim that there was a "common destination to accomplish a purpose", which Defendants allege Plaintiffs "have in common" when such an interest is "not a business interest." Id.

Defendants' argument seeks to replace the first element, which requires an agreement to carry on a joint business enterprise with criminal conspiracy, but this is entirely unsupported by the tort doctrine. Unable to establish that a business enterprise exists, Defendants intend to argue that the occupants of the Pontiac had conspired to commit a robbery on July 1, 2016. The Defendants claim the plea agreement accepted by Plaintiffs Stevenson and Cokes, for Misdemeanor Theft for receiving stolen property after the fact, constitutes evidence of an agreement to conduct a robbery. (See *Dkt. No.* 354 at *7, 14 "One of the central issues… is whether

Plaintiffs engaged in a *joint enterprise to commit a robbery* with Malone…" and Defendants claim "the original intent of the trip *was* to facilitate a robbery and was a mutual endeavor") (emphasis added). There are no cases to support the idea that an agreement to carry on a joint business enterprise can be demonstrated by the type of conspiracy that Defendants allege was the basis of an agreement between the occupants of the Pontiac. For a joint enterprise to be found, there is an indispensable requirement of a demonstration of a legitimate purpose, as opposed to a criminal one. *Pinkowski*, 347 F.2d 411, 413 (7th Cir. 1965). Defendants seek to, on one hand, claim Plaintiffs actions were in furtherance of an illegitimate criminal scheme while, on the other hand, claim that the scheme was in furtherance of the "legitimate" "business enterprise" of robbery. This court should not be convinced by such doublespeak. Nor should it be convinced by the illusion cast by the Defendants' doctrinal slight of hand – in attempting to insert elements of Joint Enterprise from the criminal context, into the doctrine of Imputed Negligence that exists in the civil context.

Assuming *arguendo* that Illinois law were even to permit use of criminal conspiracy in lieu of the business enterprise requirement, the Defendants' argument here still does not follow logically. Under Illinois law, criminal conspiracy requires proof of (1) an agreement with another that an offense be committed; (2) intent that the offense be committed; and (3) an act in furtherance of the agreement. See *People v. Hopp*, 209 Ill. 2d 1, 805 N.E.2d 1190 (2004). A conviction for receipt of property after the fact simply does not establish that there was an agreement as to the commission of robbery, is not evidence of intent to commit robbery or any act in furtherance of robbery. Plaintiffs pleaded guilty to "knowingly obtain[ing] unauthorized control over property… with intent to permanently deprive Janice Farrell of the use and benefit of said United State's [sic] Currency under ILCS 720, Section 5/16-1(a)(1)(b)(1)." (See *Dkt. No. 344-2*). The relevant portion

of the statute under which the two were convicted only requires that they "knowingly" obtained "unauthorized control over property" and further identifies it under subsection (b)(1) as "theft of property not of the person and not exceeding $500 in value." This is analogous to a misdemeanor conviction for having been an accessory after the fact. As an aside, the fact that the conviction was for property less than $500 further separates the conviction from Malone's robbery of Farrell, in which just under $1300 was claimed to have been taken. The Defendants want this court to adopt an unrefined understanding of the plea agreement, insisting that the misdemeanor is akin to a conviction for the initial indictment for robbery under 720 ILCS 5/18-1(a) and (c) for "knowingly" taking "property" "by the use of force." There is no evidence to suggest the Plaintiffs partook in the planning of a robbery, that they had intent to commit robbery, or even that they performed acts in furtherance of Malone's robbery. The very conviction which Defendants assert to evidence an agreement to commit robbery in fact exonerates the Plaintiffs on the issue of Joint Enterprise.

      This court should also maintain skepticism of the evidentiary circumstances surrounding the underlying indictment. The only reason robbery was charged in the first place was due to a fraud upon the court committed by a witness Defendants now intend to call. Detective Stan Tencza testified falsely to the grand jury that Isiah Stevenson stated in his interrogation that there was a plan to share the proceeds. A problem arose for Tencza, however, when Stevenson obtained the actual footage of the interrogation – which confirmed that he never made any such statement. Upon this realization, a motion to dismiss the indictment of Stevenson was filed. *See* **Exhibit A**. The Defendants now presumably seek to have Detective Tencza repeat these same statements to the petit jury in order to, once again, falsely imply the existence of an agreement between Malone and the passengers in the gold Pontiac – and thus they seek to receive the benefit of Tencza's earlier fraud. Defendants now also seek to examine at trial Will County Assistant State's Attorney

Christopher Koch. Having seen Stevenson's interrogation footage, Koch knew or should have known that Detective Tencza's statements to the grand jury were false. It is possible that Defendants will try to call Koch in order to provide (hearsay) testimony about Tencza's false statements to the grand jury. The highly questionable nature of such testimony or evidence would only serve to create scandalous prejudice against the plaintiffs, while never actually evidencing the required elements of Joint Enterprise in Imputed Negligence.

Courts, recognizing the emphasis that the Illinois Supreme Court has stressed upon the "business" element of Joint Enterprise in Imputed Negligence theory, have expressed "the 'common business purpose' factor is dominant and must first exist before the joint enterprise doctrine can be viewed as germane." *Babington* at 600 (Ill. App. Ct. 1972). The Illinois Supreme Court expressed in *Smith v. Bishop,* 32 Ill. 2d 380, 384 (Ill. 1964) that the doctrine required an automobile to be "used as part of a common business enterprise, and the occupants are mutually interested in the trip itself as a part of such enterprise" to impute responsibility upon passengers. This element is so foundational that "even in those cases which stress the factor of right of control, the requirement of the *business* aspect is still a prerequisite." *Babington* at 599 (Ill. App. Ct. 1972). In assessing whether a Joint Enterprise exists there must be evidence of " an express or implied agreement to carry on a joint enterprise . . . a manifestation of that intent by the parties . . . joint proprietary interest, as demonstrated by the contribution of property, finances, effort, skill or knowledge by each party . . . some degree of joint control over the enterprise, and . . . a provision for the parties to share in both the profits and losses of the enterprise." *Yokel v. Hite*, 348 Ill. App. 3d 703, 709 (Ill. App. Ct. 2004). "A joint enterprise can only exist in a business relationship [citation omitted]" and even the "relationship between two employees is not to be so labeled." *Beeson v. Smith*, 1990 U.S. Dist. LEXIS 14601, *3, 1990 WL 171794. There simply is no evidence

that plaintiffs Stevenson, Cokes, or Arrington were ever part of a business enterprise, and no basis to characterize the trip on July 1, 2016, as one.

Without establishing the existence of a business enterprise, or an agreement in furtherance of one, it is impossible for the Defendants to present a "common purpose" as between the occupants of the vehicle. In Illinois "to define a joint enterprise there must be evidence of a common *business* purpose in which the occupants are mutually interested in the trip itself as part of such purpose, and where each is responsible for the manner in which the car is operated." *Enlow v. Illinois Central R.R. Co.*, 103 Ill. App. 2d 269, 276 (Ill. App. Ct. 1969). Each of the plaintiff-occupants of the vehicle had a different purpose for their presence. Isiah Stevenson was seeking transportation from Matteson to Chicago. Michael Cokes was just going along for a social ride to occupy his time. Even if the Defendants attempt to insist that a "business enterprise" should for the first time be construed to include "criminal enterprise" contrary to the manifest weight of all of the existing case law, there still is no evidence to suggest that these individuals were members of any type of organization, and Defendants' themselves concede they do not attempt to try to make any arguments they were in a gang. *Dkt. No. 354* at *1. This would only place the Defendants in a position to then explain how their alleged criminal purpose of the trip could even remotely be construed as a "legitimate purpose" as required by the Seventh Circuit. *Pinkowski,* 347 F.2d 411, 413 (7th Cir 1965). Therefore, the Defendants' invocation of Joint Enterprise must fail as to the element of "Common Purpose."

In analyzing the third required element, the existence of a "common business interest", the word "business" must be stressed. From a plain language perspective, courts could have inserted or "common criminal interest", yet no court in Illinois has. This element depends upon the demonstration of a legitimate business interest, one that is legal and comports with the relevant

law of agency and corporations. See *Yokel*, 348 Ill. App. 3d 703, 708-709 (Ill. App. Ct. 2004). The type of interest envisioned by this element is an interest of a legitimate business enterprise. The only interest claimed to exist by the Defendants' allegations would be in the proceeds of the robbery, and even this is entirely unsupported by the evidence which does not favor the finding of a conspiracy. Without a legitimate business purpose, or a mutually shared interest between the passengers and driver "in the trip itself as a part of such enterprise," it is impossible to find the third element of Joint Enterprise. *Smith*, 32 Ill.2d 380, 385 (Ill. 1965).

Finally, as to the last of the four elements required for a Joint Enterprise finding, there must exist a mutual understanding as to the right to control the vehicle. In the MOO, this court keenly observed that "cases finding a joint enterprise often cite facts that one of the participants had a right to direct or control the other in the management of the car, which does not appear to be true here." *Dkt. No.* 336 at *28-29. This court also noted that "the factfinder could reasonably conclude that here, Malone had exclusive control of the car and the Plaintiffs were unwittingly and unwillingly along for the ride." Id. In Illinois "authorities lay down the rule that the driver's negligence should not be imputed to the passenger unless the driver and passenger are engaged in a joint or common business enterprise and the passenger has some control or some right to control the operation of the automobile." *Bridgewater v. Wagoner*, 28 Ill. App. 2d 201, 207 (Ill. App. Ct. 1960). Even in instances where an owner of an automobile is a passenger in the vehicle at the time of a collision this element "that before negligence can be imputed there must exist between the parties 'some relation of master or superior and servant or subordinate.'" *Babington*, 7 Ill. App. 3d 593, 598 (Ill. App. Ct. 1972). The Pontiac in which the plaintiffs were passengers on July 1, 2016, was a bailment in the possession of Jimmy Malone, placed in his control by his girlfriend. An analogous instance is examined in *Babington*, 7 Ill. App. 3d 593 (Ill. App. Ct. 1972), in which the

court observed a Virginia case feature a husband who had borrowed his wife's care, rendering him a bailee, and "even though she was riding in the car with him, 'until she resumed control of the property, the operation of the car was as completely within his control as if he had been the fee-simple owner.'" (Citing *Virginia Ry. Power Co. v. Gorsuch,* 120 VA. 655, 91 S.E. 632, 633.) Here none of the Plaintiffs owned the vehicle, none of them had a possessory interest in it, and any attempt to deny control of the vehicle to the bailee, Jimmy Malone, would itself be verging upon a criminal act of conversion. For this reason, Stevenson's statement regarding Jimmy Malone being a "getaway driver" is entirely irrelevant to an analysis of Joint Enterprise in these circumstances. Even if Stevenson were aware of Malone's potentially criminal background, this would not have given him authority to commandeer a vehicle in Malone's bailment, in which Stevenson had no property interest. Even if one were to assume, *arguendo*, that Stevenson was the lawful owner of the vehicle, he was still in and out of sleep at times during the events. "Does a sleeping owner of an automobile still possess a viable right of control over the driver?... to hold that Babington, while asleep, still possessed control of the automobile appears to us to tax credulity to the breaking point." *Babington,* 7 Ill. App. 3d 593, 600 (Ill. App. Ct. 1972).

Likewise, this court in its MOO expressed that "the facts do not compel a finding that Plaintiffs negligently failed to control Malone's driving . . . it is not obvious on the record that Plaintiffs knew Malone was going to flee from police in reckless fashion." *Dkt. No.* 336 at *29. As far as the Plaintiffs knew, Malone had been captured by the Illinois State Police and the vehicle had come to a stop. Then Malone abruptly decided to take off at a high rate of speed, and Plaintiffs could not possibly do anything to prevent it. This court observed the evidence that "Plaintiffs attempted to get out of the car later in the pursuit" and agreed this "supports their view of the facts." Id. Additionally, the court has even expressed that, once Malone did take off, the occupants

of the vehicle were powerless to interfere with him as the driver of a moving vehicle, and that to do so would invite "serious danger." Id. at *13 (Citing *Seeger v. Canale*, 607 N.E.2d 687, 690 (Ill. App. Ct. 1993). Because the car was a bailment in the possession of Malone, and there was no master-servant or other agency relationship between the passengers and the driver, the passenger-plaintiffs had no right to control the vehicle. Therefore, absolutely no support exists for the fourth element of Joint Enterprise.

In conclusion, the Defendants' purported affirmative defense of "Joint Enterprise" must be dismissed. There is no evidence to support a finding of a business enterprise, of an agreement to further such an enterprise, of a common purpose in furtherance of such an enterprise, or of a right to control the vehicle. The inclusion of this purported defense at trial would be in error because, as shown above, it is entirely unsupported – legally and factually. The evidence that Defendants seek to introduce in support would serve only to confuse and prejudice the jury against the plaintiffs on dubious grounds – especially when Defendants do not even *try* to satisfy the elements of Joint Enterprise and, instead, try to omit them from the jury instructions (see above). Plaintiffs ask this court to hold (as the court in *Babington* held) that "there was no *business* enterprise, for it never existed; there was no control for it had passed from… exercisable possession… the doctrine of joint enterprise has been, in many instances, too loosely applied[,] we refuse to extend it here" (7 Ill. App. 593, 600 (Ill. App. Ct. 1972); and Plaintiffs ask this court to dismiss the Defendants' affirmative defense of Joint Enterprise because, as shown above, it is entirely unsupported by the facts, evidence and law.

WHEREFORE, the Plaintiffs pray that this court will dismiss the Defendants' affirmative defense of Joint Enterprise.

Respectfully submitted,

| | |
|---|---|
| /s/ Robert J. Terracina | /s/James Montgomery, Jr. |
| Attorney for Plaintiffs Isiah Stevenson and Michael Cokes | Attorney for Plaintiff Juanita Arrington |
| /s/ Paul Luka | James D. Montgomery, Jr.<br>Montgomery Law Firm LLC |
| Attorney for Plaintiffs Isiah Stevenson and Michael Cokes | 33 W. Monroe St., Ste. 1375<br>Chicago, IL 60603<br>(312) 880-1001 |
| Paul Luka<br>paul@mendozalaw.net<br>Robert J. Terracina<br>robert@mendozalaw.net<br>Mendoza Law, P.C.<br>120 S. State St., Ste. 400<br>Chicago, IL 60603<br>(312) 508-6010 (voice AND fax) | |