UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUANITA ARRINGTON, as Independent Administrator of the Estate of RONALD ARRINGTON, deceased,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF CHICAGO, an Illinois municipal corporation, et al.,<br><br>        Defendants. | No. 17 C 05345<br><br>Judge Thomas M. Durkin |
| ISIAH STEVENSON and MICHAEL COKES,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY OF CHICAGO, an Illinois municipal corporation, et al.,<br><br>        Defendants. | No. 17 C 04839<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on two motions: (1) Plaintiff Juanita Arrington's motion in limine #29 to bar certain evidence under the Illinois Dead Man's Act, and (2) Plaintiffs' joint motion for judgment as a matter of law under Rule 50(a) as to Defendants' joint enterprise defense. The Court heard argument on these issues during the August 4, 2022 pretrial conference, which was continued to August 12, 2022, and received additional briefing. On August 12, the Court issued a brief oral ruling denying Plaintiffs' Rule 50 motion and reserved its ruling on the motion in

1

limine. For the reasons set forth below, the Court now denies Plaintiff's motion in limine. This opinion also provides additional details as to the ruling on the Rule 50 motion.

## Background

This case arises out of a collision between a police vehicle driven by defendant Dean Ewing and a Pontiac driven by Jimmy Malone, in which Ronald Arrington, Isiah Stevenson, and Michael Cokes were passengers.[1] At the time of the crash, the Pontiac was being pursued by officers with the Illinois State Police ("ISP") in response to a reported robbery. The robbery itself occurred in a parking lot near an Arby's restaurant in a Tinley Park, Illinois shopping center. Though the exact circumstances of that crime are contested, it is undisputed that Malone was riding in the Pontiac when it stopped near the Arby's. There is evidence that Arrington was driving the car at this time and that Stevenson and Cokes were passengers in the back seat.

Once the vehicle had stopped, Malone got out, stole money from someone, and got back into the vehicle before it left the scene. At some point after the robbery and before the car was first pulled over by ISP, Malone took over driving. While being pursued and just before the crash, Malone turned the Pontiac northbound onto Union Avenue, a one-way southbound street. At the same time, Ewing was driving his police vehicle eastbound on 124th Street. Although Ewing had not activated the emergency

---

[1] The term "Plaintiffs" as used in this opinion should be read to include Ronald Arrington. A more thorough account of the factual background is included in the Court's prior summary judgment ruling. *See Arrington v. City of Chicago*, 2022 WL 2105871 (N.D. Ill. June 10, 2022).

siren on his vehicle, he did not stop at the stop sign controlling the intersection between the two streets. The two vehicles entered the intersection nearly simultaneously, both traveling at high speed, and Ewing's vehicle collided with the driver's side of the Pontiac. Malone and Arrington were killed in the crash, while Stevenson and Cokes were injured. Ewing and the other officers in the police vehicle were also injured.

## Discussion

## I.    Plaintiff Arrington's Motion in Limine under the Dead Man's Act

Plaintiff moved in limine to bar evidence of conversations and events that occurred in Ronald Arrington's presence under the Illinois Dead Man's Act, 735 ILCS 5/8-201. According to Plaintiff, the Dead Man's Act applies to certain portions of this case that are governed by state law. Defendants contend that the act does not apply in this case because Plaintiff is bringing overlapping state and federal claims derived from a single incident.

Federal Rule of Evidence 601 states, "Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." In *Estate of Chlopek v. Jarmusz*, another court in this district noted that the law "does not address which evidentiary rule prevails when federal and state claims overlap." 877 F. Supp. 1189, 1193 (N.D. Ill. 1995). Citing an earlier decision and committee notes on a comparable Rule, the Court observed that when two rules are seemingly in conflict, the rule favoring reception of the evidence should be applied. *See id.* (citing *Donohoe v. Consol. Operating & Prod. Corp.*, 736 F. Supp. 845,

860-61 (N.D. Ill. 1990)). The court in *Horton v. City of Chicago* later cited *Chlopek* in holding that the Dead Man's Act does not apply "where the testimony sought to be excluded relates to overlapping state and federal claims." 2018 WL 4699790, at *4 n.5 (N.D. Ill. Sept. 30, 2018). The court concluded the federal and state claims in that case were overlapping because they involved a single event, a fatal shooting.

Plaintiff cited to several federal cases applying the Dead Man's Act, but in those cases the only claims at issue arose under state law. *See, e.g.*, *Lovejoy Elecs., Inc. v. O'Berto*, 873 F.2d 1001 (7th Cir. 1989) (state law fraud claims); *Zang v. Alliance Fin. Servs. of Ill., Ltd.*, 875 F. Supp. 2d 865 (N.D. Ill. 2012) (state law consumer protection and fraud claims); *Mossberger v. Kochheiser*, 2016 WL 2593359 (N.D. Ill. May 5, 2016) (negligence). Plaintiff has not identified, and the Court has not uncovered, any case in which a federal court applied the Dead Man's Act to only a portion of overlapping federal and state law claims.

Following *Chlopek* and *Horton*, the Court concludes that the Dead Man's Act does not apply here. Plaintiff chose to bring her claims together in federal court, where the Federal Rules of Evidence generally control. And even if the various state claims and defenses incorporate facts preceding the crash, they all overlap with the federal claim that arises from the same crash. Indeed, Plaintiff conceded during argument that she was not seeking to apply the Dead Man's Act to her own affirmative claims, because those claims all arose from the same event. However, she characterized Ewing's defenses as separate "claims" for these purposes, ostensibly arising from a different event—the alleged robbery and police pursuit. The cases do

not support this mincing of events—Ewing's defenses all go to the issue of whether he, Malone, or Plaintiffs were legally responsible for the crash. Accordingly, Plaintiff Arrington's motion in limine #29 is denied.

## II.  Plaintiffs' Joint Motion for Judgment as a Matter of Law as to Joint Enterprise

Plaintiffs' Rule 50 motion pertains to the theory of joint enterprise, asserted by Defendants. Joint enterprise is an exception to the usual rule that "the negligence of a driver of an automobile may not be imputed to his passenger." *Campanella v. Zajic*, 379 N.E.2d 866, 867 (Ill. App. Ct. 1978). Defendants contend that a joint enterprise existed between Malone, the driver of the Pontiac, and the Plaintiffs here, his passengers, such that any negligence on his part may be held against Plaintiffs in their own claims against Ewing. Defendants posit that the "enterprise" in this case was the robbery that precipitated the ISP pursuit, and that the occupants of the Pontiac carried out that robbery in concert and shared an interest in the subsequent flight from police.

Plaintiffs have moved under Rule 50(a) for partial judgment as a matter of law, arguing Defendants' assertion of a joint enterprise in connection with the alleged robbery lacks legal and evidentiary support.[2] The motion turns on two primary issues: First, can the joint enterprise rule be extended to an ostensibly criminal enterprise, or is it limited to legal, commercial enterprises under Illinois law? Second,

---

[2] Defendants characterize Plaintiffs' motion as premature and as a disguised request that the Court reconsider its summary judgment ruling. Setting aside the merits of these procedural arguments, the Court finds the issue sufficiently important that the additional discussion here is a net benefit.

would the evidence, taken in the light most favorable to the Defendants, allow a reasonable jury to find that a joint enterprise existed between Malone, Arrington, Stevenson, and Cokes in relation to their involvement with the alleged robbery that preceded the crash.

As to the first point, the case law does not clearly foreclose application of the joint enterprise rule to an alleged criminal enterprise. While Illinois cases often use terms like "business enterprise," or "common business purpose," those terms are not clearly defined and are often just reflective of the facts at hand. *See, e.g.*, *Campanella*, 379 N.E.2d at 867 ("To establish the existence of a joint enterprise … it is necessary that the evidence show that the automobile they occupied was being used as a part of a common Business enterprise and the occupants were mutually engaged in the trip itself as a part of such enterprise."); *Babington v. Bogdanovic*, 288 N.E.2d 40, 43-44 (Ill. App. Ct. 1972) (surveying terminology); *cf. Pinkowski v. Coglay*, 347 F.2d 411, 413 (7th Cir. 1965) (stating the "joint venture" doctrine requires proof of "an association of two or more persons to carry out a single enterprise with a legitimate purpose"). Despite this language, no case has been brought to the Court's attention stating unequivocally that a criminal venture cannot support application of the rule. As the court in *Babington* stated, "none of these phrases which denote the joint venture doctrine possess any particular magic which automatically determines its aptness. The doctrine must be applied, not in a vacuum, but with common sense and logic to a specific factual situation." 288 N.E.2d at 43.

The relevant pattern jury instruction cited by Plaintiffs lists four elements:

(1) An **agreement**, express or implied, between ____ and ____; and
(2) A **common purpose** to be carried out by ____ and ____; and
(3) A **common business interest in that purpose** between ____ and ____; and
(4) An **understanding** between them that each had **a right to share in the control of the operation of the car**.

IPI 72.04. At minimum, it is clear that the "business interest" element, as reflected in the cases, is meant to distinguish a true joint enterprise scenario from one in which the vehicle occupants are sharing a car as a matter of convenience or because they are simply going to the same place. *See, e.g.*, *Bridgewater v. Wagoner*, 170 N.E.2d 785, 788-89 (Ill. App. Ct. 1960) (finding no evidence of joint business venture where evidence showed plaintiff and driver took turns driving their cars back and forth to a shared workplace). The rule is also clearly inapplicable to social ventures. *Campanella*, 379 N.E.2d at 868 ("[A] joint adventure is by definition an association for commercial or profit-making purposes, not social purposes." (quoting *Clemens v. O'Brien*, 204 A.2d 895, 900 (N.J. Super. Ct. App. Div. 1964))). But historical applications of the rule also show it does not require the level of formality that the term "business" might suggest. *See Grubb v. Illinois Terminal Co.*, 8 N.E.2d 934, 938-39 (Ill. 1937) (finding sufficient evidence to support joint enterprise application where sisters agreed to travel together in a car to purchase materials to decorate their home); *Matesevac v. Will Cty.*, 416 N.E.2d 807, 811 (Ill. App. Ct. 1981) (finding joint enterprise issue properly was submitted to the jury where evidence showed the

purpose of the trip was to view a farmhouse for rent).[3] Rather, it is meant to exclude certain categories of cases where holding a passenger responsible for a driver's conduct is unfair despite a shared, prearranged interest between them.

Thus, while a criminal enterprise may not be "legitimate" enterprise by one common definition of that term, it can undoubtedly be a mutual profit-seeking endeavor undertaken by two or more persons with joint control, of the sort contemplated by the doctrine. Furthermore, the policy underlying the joint enterprise rule is equally applicable to this scenario, if not more so. Upon proof of a mutual criminal endeavor, it makes little sense to excuse accomplices in a fleeing car from the consequences of their driver's negligence while denying the same protections to a passenger engaged in more above-board activities. In both cases, evidence may show a mutual interest in the purpose of the trip and a shared right of control in the vehicle, even though only one person was behind the wheel. *See Grubb*, 8 N.E.2d at 938-39 ("It is, of course, impossible for two persons to successfully drive an automobile, but it seems clear from this testimony that the purpose of the trip to Springfield was a joint one and that these three sisters were engaged in a joint enterprise. In such a case the possession of the vehicle is joint and each has a right to control its

---

[3] Though *Yokel v. Hite*, 809 N.E.2d 721 (Ill. App. Ct. 2004), placed particular emphasis on the "business" nature of the alleged joint enterprise, that case is inapposite. The question raised there was whether a joint venture existed between several parties such that one owed fiduciary duties to the other. The court had no occasion to consider whether the rule extended to criminal conduct, and its analysis cannot be readily applied to the facts or issue presented here.

operation."). Accordingly, the Court finds that application of the joint enterprise doctrine to an alleged criminal enterprise is not foreclosed by Illinois law.

As to the second point, the Court finds that a jury could reasonably conclude that Arrington, Stevenson, and Cokes shared a common purpose with Malone in carrying out the alleged robbery, and that each had a shared interest in the subsequent flight from police. Under Rule 50, the Court must view all of the evidence in the light most favorable to the party opposing the motion. *Filipovich v. K & R Exp. Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). "A legally sufficient amount of evidence need not be overwhelming, but it must be more than a 'mere scintilla.'" *Id.*

The relevant evidence here includes testimony and video depicting the lead-up to the robbery and evidence that at least Stevenson knew of Malone as a getaway driver. In particular, a reasonable jury could credit the evidence that seems to depict the Pontiac "stalking" the robbery victim through the parking lots where the crime occurred. There is evidence that Arrington was driving the car at this time, and that when Malone jumped out to rob the victim, Arrington reoriented the car (with Malone's door still open) to facilitate a rapid getaway. It is also undisputed that sometime between the robbery and the crash, Malone took over driving. Plaintiffs contend they ceded control of the car to Malone as a repudiation of his actions, but the jury could reject this testimony in light of the surrounding circumstances, including the fact that Plaintiffs did not exit the vehicle when the ISP originally stopped it on the highway exit ramp. The contention that a car passenger door opened when the ISP ordered the occupants out of the car may suggest that at least one of

9

the occupants was unwilling to stay in the car. But that merely presents a fact question that the Court cannot decide as a matter of law. Finally, Stevenson and Cokes were later found guilty of theft via receipt of stolen property. This is all circumstantial evidence that Arrington, Stevenson, and Cokes had a mutual agreement to carry out the robbery and share in its proceeds. It is not a far leap to conclude that the flight from police was a similarly mutual endeavor, and that Malone was given direct control of the vehicle given his apparent reputation as a getaway driver.

It may be that the jury rejects Defendants' arguments and finds that they have not established the existence of a joint enterprise, a matter on which they bear the burden of proof. But given the evidence that has been proffered and the reasonable conclusions that can be drawn from it, the Court finds that Plaintiffs' have not met their burden under Rule 50 to show that a reasonable jury "would not have a legally sufficient evidentiary basis" to find that a joint enterprise existed.[4]

---

[4] The Court notes that much of the evidence Plaintiffs seek to exclude may be admissible even absent a joint enterprise finding because it is relevant to Plaintiffs' own contributory negligence and causation. Ewing is entitled to introduce evidence that Plaintiffs placed themselves in the hazardous situation in the first place and declined to take available actions to protect themselves, and that *Malone's* conduct, not Ewing's, was the proximate cause of their injuries.

## Conclusion

For the reasons set forth above and previously stated on the record, Plaintiff Arrington's motion in limine #29 is denied, and Plaintiffs' joint motion for judgment as a matter of law as to joint enterprise is denied without prejudice.[5]

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: August 15, 2022

_____

[5] R. 360, 361 in Case No. 17-cv-4839; R. 280, 282 in Case No. 17-cv-5345.